583 N.W.2d 266 (1998)
In re Arthur Dale SENTY-HAUGEN.
No. C9-96-1095.
Supreme Court of Minnesota.
August 20, 1998.
Rehearing Denied September 17, 1998.
Steven R. Kufus, St. Paul, for appellant.
Susan Gaertner, Ramsey County Atty., Steven R. Pfaffe, Asst. Ramsey County Atty., St. Paul, for respondent.
Heard, considered, and decided by the court en banc.

OPINION
GARDEBRING, Justice.
Arthur Dale Senty-Haugen appeals a decision by the trial court, affirmed by the court of appeals, holding that the statutory provisions governing commitment as a sexual psychopathic personality or sexually dangerous person (SPP/SDP) do not entitle him to receive treatment from the least restrictive alternative program if no funding exists to pay for that treatment. Ramsey County petitioned to have Senty-Haugen, a convicted sex offender, committed as SPP/SDP under *267 Minn.Stat. §§ 253B.02, subds. 18a, 18b; 253B.185 (1996). At a preliminary hearing, Senty-Haugen stipulated that he met the requirements for commitment under the SPP/SDP provisions, and in return, he was permitted to seek admission to and funding for a sexual offender treatment program called Alpha House, a program less restrictive than a state secure treatment facility. After Senty-Haugen unsuccessfully attempted to join as parties several governmental agencies in an effort to compel them to fund his placement at Alpha House, the court ordered that Senty-Haugen be indefinitely committed to a state secure treatment facility for sexual offenders. The court of appeals affirmed.
While we agree that Senty-Haugen has no right to treatment at Alpha House, we base our decision on a different theory than the court of appeals. Specifically, we conclude that, unlike the provisions relating to commitment for mental illness, mental retardation or chemical dependence, the statutory provisions governing SPP/SDP commitments contain no requirement that treatment be in the least restrictive setting. Therefore, we affirm the court of appeals.
Senty-Haugen was convicted in July 1993 of seven counts of criminal sexual conduct involving minors and served 18 months in prison. In November 1994, several weeks before his scheduled release, Ramsey County filed a petition seeking to have him indefinitely committed as SPP/SDP under Minn. Stat. §§ 253B.02, subds. 18a, 18b; 253B.185.
At a pre-trial conference in February 1995, Senty-Haugen agreed to admit virtually all of the allegations in the commitment petition, to waive his right to a hearing, and to stipulate that he met the requirements for commitment under the SPP/SDP provisions. As part of the stipulation, the parties agreed that Senty-Haugen could seek admission to a program such as Alpha House, a private, highly structured, community-based treatment facility for nonviolent pedophiles that was less restrictive than a state secure treatment facility. Nevertheless, the stipulation stated that the court was not required to commit Senty-Haugen to Alpha House or any other less restrictive program, even if he were admitted and had full support from the mental health professionals who had examined him.
In March, Alpha House's intake director informed Senty-Haugen that he would be accepted into its program if funding was available to pay for his treatment, but that there was an 8- to 10-month waiting list for an opening. A psychologist and a psychiatrist from a state secure treatment facility both agreed that Senty-Haugen was an acceptable candidate for treatment at Alpha House. After considering this testimony, the district court stated that Alpha House might in fact be a better program for Senty-Haugen than treatment at a state secure treatment facility. The issue arose, however, as to who would pay for treatment at Alpha House. The court postponed the final commitment hearing for 30 days to allow Senty-Haugen to pursue funding alternatives.
Attempting to secure funding for his treatment at Alpha House, Senty-Haugen filed a motion seeking to join the Ramsey County Department of Corrections, the Minnesota Commissioner of Human Services, and several other government agencies as necessary parties to the commitment proceeding. The Ramsey County Department of Corrections and the Minnesota Commissioner of Human Services each denied responsibility to pay for Senty-Haugen's treatment at Alpha House.
The district court denied Senty-Haugen's motion, concluding that none of the government agencies that Senty-Haugen sought to join had a statutory obligation to fund treatment at Alpha House. In an order dated March 29, 1996, the court held that Ramsey County had proved by clear and convincing evidence that Senty-Haugen was SPP/SDP, that commitment was necessary for the protection of society, and that there was no reasonable alternative to commitment. It committed Senty-Haugen indefinitely to the sexual psychopathic personality treatment program at a state secure treatment facility. The court made detailed findings of fact in its order, but did not mention Alpha House or discuss the feasibility of placing Senty-Haugen in a less restrictive alternative to the state secure treatment facility.
*268 Senty-Haugen appealed, asserting that the district court erred first in finding that Ramsey County was not obligated to fund treatment at Alpha House, and second, in failing to make sufficient findings regarding the availability of less restrictive treatment programs. The court of appeals affirmed. While this appeal was pending, Alpha House's executive director informed the Minnesota Attorney General's Office that its program no longer admitted persons who had been committed as SPP/SDP.
On appeal to this court, Senty-Haugen argues that the district court erred in failing to place him in the least restrictive treatment program  that is, Alpha House  when there was clear and convincing evidence that Alpha House was an acceptable alternative to commitment to a state secure treatment facility and that funding was available. The lower court decisions as well as the parties' briefs contain detailed considerations of which government agency might be required to pay for Senty-Haugen's treatment in a facility determined to be less restrictive than a state secure treatment facility. Although we affirm, we do so on a different theory. See, e.g., Brecht v. Schramm, 266 N.W.2d 514, 520 (Minn.1978) (holding that a lower court's decision should not be overturned if it may be affirmed on a different theory). Our reading of the relevant statutes suggests that, unlike commitment procedures for persons with mental illness, mental retardation or chemical dependency, Minn.Stat. § 253B.185, governing SPP/SDP commitments, simply does not require that such commitments be made to the least restrictive treatment program.[1]
We begin with an examination of the complex statutory scheme that provides both substantive standards and procedural requirements for the civil commitment of Minnesota citizens. See Minn.Stat. ch. 253B (1996). We review such questions of statutory interpretation de novo. Lolling v. Midwest Patrol, 545 N.W.2d 372, 375 (Minn. 1996). The statutory scheme for commitment varies considerably depending upon the type of mental illness or other condition that triggers the state's intervention, reflecting the legislature's various approaches to balancing individual rights against the needs and obligations of the larger society.
In general, commitments are of three basic types: (1) those involving persons who are mentally ill, mentally retarded or chemically dependent, and governed generally by the definitions contained in Minn.Stat. § 253B.02 and the procedures contained in §§ 253B.07-.09; (2) those involving persons deemed "mentally ill and dangerous," as defined in Minn.Stat. § 253B.02, subd. 17, and governed by the procedures contained in Minn.Stat. § 253B.18; and (3) those involving persons sought to be committed as "sexual psychopathic personalities" or "sexually dangerous persons" under Minn.Stat. § 253B.02, subds. 18a, 18b; and governed by the procedures contained in section 253B.185. The standards and procedures governing commitments for the first category of persons  those who are mentally ill, mentally retarded or chemically dependent  are the most deferential to individual personal rights and contain the greatest degree of due process protection. In keeping with that philosophical approach, only the provisions governing commitment of mentally ill, mentally retarded or chemically dependent persons contain a provision that, upon a finding that there is no suitable alternative to judicial commitment, "the court shall commit the patient to the least restrictive treatment program which can meet the *269 patient's treatment needs." Minn. Stat § 253B.09, subd. 1 (emphasis added).
Yet whether the requirement that the court commit an individual to least restrictive treatment program applies to individuals committed as SPP/SDP, such as Senty-Haugen, requires, we think, a closer examination of the statutory scheme. Section 253B.185, subd. 1, which contains procedures for SPP/SDP commitments, provides that:
Except as otherwise provided in this section, the provisions of this chapter pertaining to persons mentally ill and dangerous to the public apply with like force and effect to persons who are alleged or found to be sexually dangerous persons or persons with a sexual psychopathic personality.
Turning then to the provisions "pertaining to persons mentally ill and dangerous," we find statutory language setting out procedures and standards that are in significant contrast to the process for the commitment of mentally ill, mentally retarded or chemically dependent persons. When a court concludes that a person meets the statutory criteria for mentally ill and dangerous, "it shall commit the person to the Minnesota Security Hospital, a regional center designated by the commissioner or to a treatment facility." Minn.Stat. § 253B.18, subd. 1. Nowhere does this provision contain the language of "least restrictive alternative."
This contrasts with the provision governing placements for people who are civilly committed as mentally ill, mentally retarded, or chemically dependent, which, as previously described, contains a specific requirement that commitment, if found to be necessary, be made to the "least restrictive treatment program which can meet the patient's treatment needs * * *." Minn.Stat. § 253B.09, subd. 1. We believe this reflects a legislative determination that the acceptable treatment alternatives for a person found to be mentally ill and dangerous within the meaning of the commitment statutes are much more limited. Similarly, the provisions in the section governing commitment of those found to be mentally ill and dangerous allow for an "indeterminate commitment," with consideration of release to be made only by a "special review board." Minn.Stat. § 253B.18, subd. 2. These procedures provide considerable contrast to the procedures governing commitments of mentally ill, mentally retarded or chemically dependent persons, which provide for a limitation on the period of commitment, for stays of the commitment and for provisional discharge. See, e.g., Minn.Stat. §§ 253B.09-.17 (1996).
Because SPP/SDP commitments are governed by commitment procedures for persons deemed mentally ill and dangerous, we conclude that there is no requirement for commitment to the least restrictive alternative for persons determined to be sexually psychopathic personalities or sexually dangerous persons. Thus, the commitment court's failure to provide findings of fact relating to the availability of a less restrictive alternative and, more importantly, its failure to commit Senty-Haugen to Alpha House, or any other facility less restrictive than the state secure treatment facility, was not inconsistent with the statutory requirements for SPP/SDP commitments.[2]
We can identify no statutory requirement that SPP/SDP commitments must be to the least restrictive alternative treatment program.[3] In the absence of such a legislative *270 mandate, Senty-Haugen's claim that his commitment does not meet statutory standards must fail.
Affirmed.
PAUL H. ANDERSON, J., took no part in the consideration or decision of this case.
PAGE, Justice, (dissenting).
I respectfully dissent. The court concludes that because "SPP/SDP commitments are governed by commitment procedures for persons deemed mentally ill and dangerous * * * there is no requirement for commitment to the least restrictive alternative for persons determined to be sexually psychopathic personalities or sexually dangerous persons." The court reaches the conclusion based on its reading of the statutory scheme which sets out the procedures for SPP/SDP commitments. The problem with the court's conclusion is that it ignores the constitutional mandate that the nature of the commitment bear some reasonable relationship to the purpose for which the individual is committed.[1] Due process requires that Senty-Haugen be committed to the least restrictive treatment facility that serves the state's dual interests of treating his sexual dysfunction and protecting society.[2]
The argument over which government agencies' budget funds Senty-Haugen's treatment in the least restrictive facility, while an interesting one, misses the point. Senty-Haugen is entitled to commitment in the least restrictive facility available, irrespective of the funding source. Whether the funding comes from the county's budget, the Department of Human Services' budget, or some other budget is not this court's concern. Indeed, how the state funds his commitment is for the legislature, not the courts, to decide. Whether his commitment is constitutional is this court's concern and for this court to decide. To the extent that funding for people committed as SPP/SDP is only made available for their confinement in the most restrictive facilities available, it begins to look like the state is more interested in preventive detention than in treatment.
NOTES
[1] Respondent Ramsey County argued initially that this appeal should be dismissed as moot because Alpha House no longer accepts persons who have been committed as SPP/SDP. In general, we will dismiss an appeal as moot if an award of effective relief becomes impossible. See, e.g., In re Application of Minnegasco, 565 N.W.2d 706, 710 (Minn.1997); In re Inspection of Minn. Auto Specialties, Inc., 346 N.W.2d 657, 658 (Minn.1984). We conclude that the controversy at issue here remains alive because Alpha House is but one choice among possible placements that are less restrictive than a state secure treatment facility. The court as well as the mental health professionals who examined Senty-Haugen agreed that he was an appropriate candidate for a less restrictive placement. The crux of this appeal  whether there exists a requirement of commitment to a less restrictive treatment program  remains whether or not Alpha House will admit Senty-Haugen. The appeal is not moot, and accordingly, we consider the merits of Senty-Haugen's claims.
[2] We are aware that Rule 12.06 of the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982 contains a requirement that at the time the court considers an indeterminate commitment for a person deemed to be mentally ill and dangerous, the proponent of the commitment bears the burden of establishing by clear and convincing evidence that "there is no appropriate less restrictive alternative available." Special Rule 12.06. However, no such requirement exists in the statute, and we conclude that the statute controls the substantive requirements for commitment. See, e.g., In re King Resources Co., 651 F.2d 1349, 1353-54 (10th Cir.1981) (invalidating a bankruptcy rule that created a substantive right not present in the Bankruptcy Act). Therefore, to the extent that Rule 12.06 requires commitment to the least restrictive treatment program, we hold that it does not apply to SPP/SDP commitments.
[3] We decline the invitation of the dissent to sua sponte declare unconstitutional the statutes governing SPP/SDP commitments. It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); see also Lisa A. Kloppenberg, Avoiding Constitutional Questions, 35 B.C. L.Rev. 1003 (1994). Here, neither of the parties raises the issue of the constitutionality of the statutes at issue. Without a party claiming constitutional injury, and in the absence of any legal analysis of the constitutional issues, the dissent's conclusion is without merit.
[1] Foucha v. Louisiana, 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
[2] See id.; cf. Jones v. United States, 463 U.S. 354, 381, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), (Brennan, J., dissenting) ("In considering the requirements of due process, we have often inquired whether alternative procedures more protective of individual interests, at a reasonable cost, were likely to accomplish the State's legitimate objectives").