John Willard **HINCE**,
et al., Appellants,

v.

Michael **O'KEEFE, Commissioner**
**of the Department of Human**
**Services, et al., Respondents.**

No. C0–00–49.

Court of Appeals of Minnesota.

July 11, 2000.

Review Granted Sept. 13, 2000.

Warren J. Maas, Brooklyn Park, (for appellants).

Mike Hatch, Attorney General, Noah A. Cashman, Assistant Attorney General, St. Paul (for respondents).

Considered and decided by KLAPHAKE, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.*

**OPINION**

KLAPHAKE, Judge

Appellants, 28 individuals who have been civilly committed to the Minnesota Sex Offender Program (MSOP) for an indeterminate period as sexual psychopathic personalities (SPPs), sexually dangerous persons (SDPs), or both, challenge the district court's decision to dismiss their action for declaratory relief. Appellants sought a declaration that Minn.Stat. § 253B.22, subd. 1 (1998), requires the Commissioner of Human Services (the commissioner) to establish review boards at the two secure facilities where those committed to the MSOP are placed. We disagree and affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

In 1971, the legislature authorized the commissioner to develop regional centers for the care of those committed as mentally ill, mentally retarded, or chemically dependent. 1971 Minn. Laws ch. 961, § 19 (codified at Minn.Stat. § 245.0312 (1998)). In 1993, the legislature authorized the commissioner to establish a new secure facility in Moose Lake for those committed as SPPs or SDPs. 1993 Minn. Laws 1st Spec. Sess. ch. 1, art. 7, § 28 (codified at Minn.Stat. § 246B.02 (1998)). MSOP provides care and treatment in this facility for 100 individuals civilly committed as SPPs and SDPs. Minn.Stat. § 246B.02. MSOP has expanded and its facilities now include two wings at the security hospital in St. Peter.

Under Minn.Stat. § 253B.22, subd. 1 (1998), the commissioner is required to establish and review boards for the regional treatment centers to review the admission and retention of patients at the treatment facility and to investigate complaints. Minn.Stat. § 253B.22, subd. 4 (1998). The commissioner has not established review boards for the MSOP sites, on the grounds that they were not "regional treatment centers" at which review boards were legislatively required or authorized. Here, appellants argue that the commissioner is required to establish review boards at the MSOP sites.

## ISSUES

1. Does Minn.Stat. § 253B.22, subd. 1 (1998) require the commissioner to provide a review board for secure facilities established pursuant to Minn.Stat. §§ 246B.01–.04 (1998)?

2. Does the lack of a review board violate appellants constitutional rights?

1. In 1997, the term "regional center" was changed to "regional treatment center" but retained the same definition. *See* 1997 Minn. Laws ch. 217, art. 1, § 15 (amending Minn.

## ANALYSIS

When an appellate court reviews a case dismissed for failure to state a claim on which relief can be granted, the "only question before us is whether the complaint sets forth a legally sufficient claim for relief." *Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980) (emphasis citation omitted).

Questions of statutory construction are legal questions reviewed de novo by an appellate court. *In re Senty–Haugen,* 583 N.W.2d 266, 268 (Minn.1998). If the language of the statute is "plain and unambiguous, the court must give it its plain meaning." *Wynkoop v. Carpenter,* 574 N.W.2d 422, 425 (Minn.1998) (citation omitted). If interpretation is necessary, the court should give effect to the legislature's intent. Minn.Stat. § 645.16 (1998); *Cummings v. Koehnen,* 568 N.W.2d 418, 422 (Minn.1997). If ambiguous, the rules of statutory construction must be applied. *Correll v. Distinctive Dental Servs.,* 607 N.W.2d 440, 445 (Minn.2000).

### I.

The commissioner is mandated to establish a review board "for each regional center to review the admission and retention of its patients receiving services under this chapter." Minn.Stat. § 253B.22, subd. 1 (1998). "Regional center," or "regional treatment center,"[1] is defined as "any state operated facility for *mentally ill, mentally retarded or chemically dependent persons* which is under the direct administrative authority of the commissioner." Minn. Stat. § 253B.02, subd. 18 (1998) (emphasis added). The definition of "treatment facility" refers to a hospital, community mental health center, or other treatment provider caring for mentally ill, mentally retarded,

Stat. § 253B.02, subd. 18). Several sections, including Minn.Stat. § 253B.22, subd. 1, still use the term "regional center," but the two terms appear to have the same meaning.

or chemically dependent persons. Minn. Stat. § 253B.02, subd. 19 (1998).

Appellants contend that the section applies to them, requiring establishment of review boards at the MSOP facilities, because persons committed as SPPs and SDPs are "patients" under the commitment act. Minn.Stat. § 253B.02, subd. 15 (1998) (defining patient as "any person who is receiving treatment or committed under this chapter"). Further, they argue that the legislature did not limit the functions of the review board to regional centers, but instead referred more broadly to treatment facilities, which could encompass MSOP sites. *See* Minn.Stat. § 253B.22, subd. 4 (1998).

In some respects, the legislature treats commitments as mentally ill, mentally retarded, and chemically dependent differently from commitments as SPP and SDP. *See Senty–Haugen,* 583 N.W.2d at 269. One important difference is that those committed as SPP and SDP must be initially committed to "a secure treatment facility or to a treatment facility willing to accept the patient under commitment." Minn.Stat. § 253B.18, subd. 1 (1998); *see* § 253B.185, subd. 1 (1998) (generally applying provisions of section 253B.18 to SPP and SDP commitments). The term "secure treatment facility" is defined as "the Minnesota security hospital or the Minnesota sexual psychopathic personality treatment center." Minn.Stat. § 253B.02, subd. 18a (1998). By contrast, persons committed as mentally ill, mentally retarded, or chemically dependent must be committed to "the least restrictive treatment program or alternative programs which can meet the patient's treatment needs * * * [including] regional treatment center services." Minn.Stat. § 253B.09, subd. 1 (1998).

Further, as the commissioner argues, the review boards primarily serve to review the admission and retention of men-

tally ill, mentally retarded, or chemically dependent patients. Minn.Stat. § 253B.22, subd. 1. Patients who believe commitment is no longer appropriate may report their concerns to a review board, which will then investigate and make a recommendation to the head of the treatment facility and the commissioner. Minn. Stat. § 253B.22, subd. 4. The head of a treatment facility is authorized to discharge individuals committed under these categories when the commitment period expires or when the treatment facility head determines that the person no longer needs care and treatment. Minn.Stat. § 253B.16, subd. 1 (1998). By contrast, patients committed as SPP and SDP are committed for an indeterminate time. Minn.Stat. § 253B.18, subd. 3 (1998). Both a "special review board" and the commissioner must concur before discharge is authorized. *See* Minn.Stat. § 253B.18, subds. 4c, 15 (1998).

That the legislature treats these placements differently is emphasized by the fact that it enacted a separate chapter to authorize the commissioner to establish the Minnesota Sexual Psychopathic Personality Treatment Center (MSPPTC) and to govern facilities for those committed as SPP or SDP. Minn.Stat. §§ 246B.01–.04 (1998). The commissioner is required to apply to the Commissioner of Health to license the MSPPTC as a "supervised living facility with applicable program licensing standards." Minn.Stat. § 246B.03. Further, the commissioner was directed to adopt rules to govern the operation, maintenance, and licensure of the program at the MSPPTC or at any other facility that the commissioner operates for persons committed as a psychopathic personality. Minn.Stat. § 246B.04. Consistent with this directive, the commissioner promulgated such rules. Minn. R. 9515.3000–.3110 (1999). No review board is required by the applicable statute or rules.

Appellants, however, cite the following reference in the commitment act, which

provides a circumstance under which a person committed as SPP or SDP should be transferred to a regional center:

> If a person is committed [as SPP or SDP] after a commitment to the commissioner of corrections, the person shall first serve the sentence in a facility designated by the commissioner of corrections. After the person has served the sentence, the person shall be transferred to *a regional center* designated by the commissioner of human services.

Minn.Stat. § 253B.185, subd. 2(b) (1998) (emphasis added.) Appellants argue that this reference shows a clear and unambiguous statement of legislative intent that the MSOP sites are considered regional centers.

The intent of this provision is to ensure that persons who are committed as SPP or SDP while serving a prison sentence complete the sentence before being transferred to a human services facility for treatment. We agree with the commissioner that the reference to "regional center" is only a vestige of an earlier statute that predated the statutory establishment of the MSOP sites as facilities for persons committed as SPP and SDP. *See* Minn. Stat. § 526.10, subd. 2(b) (1992) (earlier codification of statute containing reference to "regional center").

## II.

Next, appellants raise constitutional challenges. First, they claim their equal protection rights were violated when they were denied access to a review board. As the commissioner points out, appellants did not raise their equal protection claim in the lower court, so it should not be considered on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988); *In re Welfare of C.L.L.,* 310 N.W.2d 555, 557 (Minn.1981) (appellant may not raise constitutional issues for first time on appeal).

We nonetheless briefly address the issue. Because the fundamental right of liberty is involved in SPP and SDP commitments, we use a heightened degree of scrutiny. *In re Blodgett,* 510 N.W.2d 910, 917 (Minn.1994). This court must defer to the legislature, and the statute's genuine and substantive distinctions must be reasonably connected to achieving the state's legitimate purposes. *In re Linehan,* 557 N.W.2d 171, 186 (Minn.1996), *vacated remanded on other grounds,* 522 U.S. 1011, 118 S.Ct. 596, 139 L.Ed.2d 486 (1997), *aff'd. as modified,* 594 N.W.2d 867 (Minn. 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999). As already discussed, differences exist between commitment as mentally ill, mentally retarded, or chemically dependent and commitment as SPP or SDP. These differences are justified by the increased danger posed by those committed as SPP or SDP. The failure to provide appellants a review board under Minn.Stat. § 253B.22, subd. 1, which is intended to apply to a different kind of commitment, thus does not violate equal protection.

Appellants also raise a double jeopardy argument, claiming that the denial of a review board is inherently punitive and is not related to commitment as SDP and SPP. The supreme court previously has rejected the argument that civil commitment as SPP or SDP violates double jeopardy, and appellants make no argument that would require a different result here. *See In re Linehan,* 594 N.W.2d 867, 872 (Minn.), *cert. denied,* —— U.S. ——, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999).

## DECISION

The decision of the district court dismissing the declaratory judgment action is affirmed.

**Affirmed.**