**STATE of Minnesota, Respondent,**

v.

**Richard Lowell BOURKE, Appellant.**

**No. A04–1121.**

Supreme Court of Minnesota.

Aug. 3, 2006.

---

924

John Stuart, State Public Defender, Bridget Kearns Sabo, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Thomas R. Ragatz, Mary McKinley, Assistant Attorney Generals, St. Paul, MN, Jeffrey Edbald, Isanti County Attorney, Cambridge, MN, for Respondent.

## OPINION

GILDEA, Justice.

Richard Lowell Bourke was found guilty of conspiring to manufacture methamphetamine and sentenced to 72 months in prison. Bourke argues that the district court erred in denying his motion to suppress the evidence seized during the nighttime search of his property. Bourke contends that the search warrant application did not contain specific facts to justify a nighttime search as required by the constitution and Minn.Stat. § 626.14 (2004). The court of appeals affirmed the district court. *State v. Bourke*, No. A04–1121, 2005 WL 1514324, at *2 (Minn.App. June 28, 2005). We affirm.

Isanti County Deputy Sheriffs Lisa Lovering and Robert Bowker drove to Richard Lowell Bourke's property at approximately 8:00 p.m. on November 7, 2002. A bonding agent had contacted Lovering to inform her that William Kelly Brown, who was wanted on an outstanding felony warrant, was staying in the pole barn on Bourke's property. Lovering knocked on Bourke's door and Bourke answered. While Lovering spoke with Bourke, Bowker walked to the pole barn and looked through an uncovered window. Inside the pole barn, Bowker saw two men, guns in a gun rack, syringes, pipes, small straws, a fan, and a woman wearing latex gloves. Bowker thought methamphetamine was being manufactured inside the pole barn and that one of the men was Brown, and he shared these suspicions with Lovering when she finished talking with Bourke at the house and joined Bowker near the pole barn.

Although Bourke told Lovering that he had not seen Brown for about a week, Bourke told the officers that he would let them into the pole barn, which was located about 200 feet from Bourke's residence. The officers testified that as Bourke was opening the door of the pole barn, he yelled out, "cops" or "the cops are here." After seeing the three people in the barn gather up items and head toward the stairs to the barn loft, Bowker entered the barn, ordered all three people to the ground, and Bourke fled the scene.

Later that night, Isanti County Sheriff's investigator Chris Janssen applied for a warrant to search Bourke's residence and "any and all outbuildings located on [Bourke's] property." The application included a list of a number of items associated with the manufacture of methamphetamine that Janssen believed would be found on the property, and the attached affidavit established Janssen's familiarity "with various methods of processing, ingesting, and distributing controlled substances, as well as equipment and paraphernalia associated with these processes."

The affidavit recited the factual events of the evening as follows:

On 11/7/2002 at 2020 hours Deputies Bowker and Lovering of the Isanti County Sheriff's Office responded to the residence of [Bourke] in an attempt to locate [Brown]. Brown had an active felony warrant for controlled substance from Anoka County. Deputy Lovering had received information that Brown was staying at a pole barn at the residence. Upon the deputies arrival Deputy Bowker went to the pole barn and while he looked through a window in an attempt to locate Brown he observed two males and a female at a table in the process of manufacturing methamphetamine. The homeowner Richard Bourke let the deputies into the pole barn and the three parties inside were placed under arrest and the homeowner fled the scene before he could be apprehended.

The application then indicated, "A nighttime search is (not) necessary (including the hours of 8:00 p.m. to 7:00 a.m.) to prevent the loss, destruction or removal of the objects of the search because: of the lateness of the hour and the possible destruction of evidence." The application requested that the warrant be issued to allow the search to be conducted "in the daytime or nighttime." The district court judge signed the warrant, which was dated November 7, 2002. The receipt and inventory of the search, filed the following day, indicated that the search was conducted at 11:30 p.m. on November 7, and listed a number of weapons and assorted drug paraphernalia that had been found on Bourke's property.

Bourke was arrested approximately 100 yards from his residence after a State Patrol helicopter located him.[1] Bourke was charged by complaint on November 8, 2002, for both manufacturing and conspiring to manufacture a controlled substance in the first degree. Prior to trial, Bourke made a motion to suppress all of the evidence obtained in the search, arguing that there was a "lack of sufficient information provided to the magistrate to justify the issuance of [a warrant] authorizing a nighttime search." The district court denied Bourke's motion in a written order.

After a bench trial on stipulated facts, the district court found Bourke guilty of conspiring to manufacture methamphetamine in violation of Minn.Stat. § 152.096, subd. 1 (2004). Bourke was sentenced to 72 months in prison. The court of appeals affirmed the district court's denial of Bourke's suppression motion. *Bourke*, 2005 WL 1514324, at *2. We granted Bourke's petition for review and now affirm.

### I.

■ Bourke argues that the nighttime search of his property violated United States and Minnesota constitutional protections against unreasonable searches,[2] and also violated Minn.Stat. § 626.14.[3] We

---

1. The precise timing of Bourke's arrest is unclear, and it may have occurred before, during, or after the search of his property.

2. The Fourth Amendment to the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 10 of the Minnesota Constitution has nearly identical language to the Fourth Amendment of the United States Constitution.

3. Minnesota Statutes § 626.14 states:

A search warrant may be served only between the hours of 7:00 a.m. and 8:00

have noted that the question of whether a nighttime search is authorized is the subject of statutory regulation in Minnesota, and that the issue "may also have a constitutional dimension." *State v. Lien,* 265 N.W.2d 833, 839 (Minn.1978). We address Bourke's statutory argument first because "[o]ur general practice is to avoid a constitutional ruling if there is another basis on which a case can be decided." *Erlandson v. Kiffmeyer,* 659 N.W.2d 724, 732 n. 7 (Minn.2003); *see also In re Senty–Haugen,* 583 N.W.2d 266, 269 n. 3 (Minn.1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise.").

Minnesota Statutes § 626.14 requires that before the court issues a warrant for a nighttime search, it must first determine that the nighttime search "is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public." The statute thus contains the reasons for which the court could find necessity to authorize a search at night. The statute, however, does not set forth the showing required to sustain a conclusion of necessity.

In *Lien,* we said that "[w]hat the Minnesota statute seems to require is some showing to the magistrate that the warrant can only be executed successfully in the nighttime." 265 N.W.2d at 840.[4] The affidavit reviewed in *Lien* stated only that "it is unknown when the person described herein will be at the premises described herein." *Id.* We concluded that such an assertion, which we noted "could be made in almost any case," was not sufficient to authorize a nighttime search. *Id.*

Beyond the general statement in *Lien* that the statute requires "some showing," we have not articulated the quantum of proof required for the authorization of a nighttime search under the statute. We now hold that the statute requires at least a finding that there is reasonable suspicion to believe a nighttime search is necessary to preserve evidence or to protect officer or public safety.[5]

The United States Supreme Court has noted that in the context of unannounced entries, the reasonable suspicion standard "strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by" such entries. *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct.

p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public. The search warrant shall state that it may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless a nighttime search outside those hours is authorized.

The parties did not raise any potential separation of powers issues with Minn.Stat. § 626.14. Accordingly, we do not address this question.

4. *Lien* also addressed a "no-knock" entry by officers in possession of a search warrant. 265 N.W.2d at 836–39. In *Lien,* we appear to have stated a blanket rule authorizing "no-knock" search warrants whenever the affida-

vit alleged "that the dwelling is being used as an outlet or a warehouse for a drug business." *Id.* at 839. This portion of *Lien* is no longer good law after *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). *See Garza v. State,* 632 N.W.2d 633, 638 n. 1 (Minn.2001) ("To the extent *Lien* can be understood to authorize an unannounced entry on a showing only that the premises were used for drug trafficking, it is overruled.").

5. The parties do not argue that the statute requires more than reasonable suspicion. Because the issue was not directly advanced in this case, we leave for another day the question of whether the statute requires more than a finding of reasonable suspicion of necessity.

1416, 137 L.Ed.2d 615 (1997). Similar competing interests are at issue in the context of nighttime searches, and we conclude that applying at least the reasonable suspicion standard provides a way to balance these competing interests in this context as well.

■ "The policy behind prohibiting nighttime searches in the absence of specific judicial authorization in the warrant is to protect the public from the 'abrasiveness of official intrusions' during the night." *State v. Stephenson,* 310 Minn. 229, 233, 245 N.W.2d 621, 624 (1976) (quoting *United States v. Ravich,* 421 F.2d 1196, 1201 (2d Cir.1970)). We have said that, in enacting section 626.14, "[t]he legislature recognized that entry into a residence in the middle of the night is a greater invasion of residential privacy than entry during the daytime." *State v. Winchell,* 363 N.W.2d 747, 750 (Minn.1985); *see also Lien,* 265 N.W.2d at 839–40 ("Underlying the Minnesota statutory rule * * * is the belief that a nighttime search of a home involves a much greater intrusion upon privacy and is presumably more alarming than an ordinary daytime search of a home.").

Requiring that a judicial officer conclude that there is at least a reasonable suspicion that the warrant needs to be executed at night, in addition to finding probable cause to issue the warrant itself, recognizes the legislature's policy judgment in providing a statutory protection against nighttime intrusions. At the same time, the reasonable suspicion showing is "not high." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416. We have said that reasonable suspicion

requires "something more than an unarticulated hunch, that the officer must be able to point to something that objectively supports the suspicion at issue." *State v. Wasson,* 615 N.W.2d 316, 320 (Minn.2000). The reasonable suspicion standard thus is consistent with our characterization in *Lien* that section 626.14 requires "some showing" of necessity. *See Lien,* 265 N.W.2d at 840.

We hold that before a nighttime search is authorized under section 626.14 the application for the warrant must establish at least a reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety.

## II.

■ We turn next to a review of the application for a warrant to search Bourke's property to determine whether it made the reasonable suspicion showing.[6] When reviewing pretrial orders on motions to suppress evidence, we independently review the facts and determine, as a matter of law, whether the district court erred in its ruling. *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999). The district court's factual findings are reviewed under the clearly erroneous standard, but we review the district court's legal determinations de novo. *See State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998).

■ On review, we give "great deference to the issuing judge's determination" of probable cause for a search warrant. *State v. Jones,* 678 N.W.2d 1, 11 (Minn. 2004). The primary rationale for giving the issuing judge "great deference" is to avoid setting such a high standard for

---

**6.** We note that in the constitutional context of a "no-knock" entry, the Supreme Court has assessed all of the circumstances confronting the officers at the time of entry in determining whether there was reasonable suspicion sufficient to make an unannounced entry. *See*

*Richards,* 520 U.S. at 395, 117 S.Ct. 1416 (examining "reasonableness of the officers' decision * * * as of the time they entered"). Minn.Stat. § 626.14, by contrast, limits the inquiry to an examination "of facts stated in the affidavits."

warrants that the police would be discouraged from seeking the warrant in the first place. *See State v. Harris*, 589 N.W.2d 782, 791 (Minn.1999) ("To ensure that the warrant requirement does not become so burdensome as to discourage the police from seeking review by * * * a neutral [magistrate], 'the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants.' ") (quoting *State v. Wiley*, 366 N.W.2d 265, 268 (Minn.1985)). Under this same rationale, we conclude that we should give the same deference to the issuing judge's determination of whether a nighttime search warrant should be authorized under Minn.Stat. § 626.14. The issuing judge's determination must be based on "the factual allegations contained in the affidavit in support of the warrant application and the reasonable inferences to be drawn therefrom." *See State v. Bradford*, 618 N.W.2d 782, 786 (Minn.2000).

The search warrant application and supporting affidavit stated, "A nighttime search is (not) necessary (including the hours of 8:00 p.m. to 7:00 a.m.) to prevent the loss, destruction or removal of the objects of the search because: of the lateness of the hour and the possible destruction of evidence." Bourke argues that the search warrant application's "unsupported contention that evidence might be destroyed is the precise type of boilerplate language found to be insufficient by both the United States Supreme Court and Minnesota courts."

Bourke is correct that "boilerplate language" has been found to be insufficient to justify a warrant under the reasonable suspicion standard. *Cf. Richards*, 520 U.S. at 394, 117 S.Ct. 1416 (rejecting Wisconsin Supreme Court's blanket exception to reviewing reasonableness of no-knock provision in search warrant for felony drug investigations and requiring review of the

facts and circumstances of the particular search); *Garza v. State*, 632 N.W.2d at 638 (requiring a "particularized showing of dangerousness, futility, or destruction of evidence" and holding that mere statement in "general terms * * * with no factual nexus to particularized facts" was insufficient). The search warrant application for Bourke's property, however, provides more than mere boilerplate language to justify a nighttime search. As the court of appeals correctly noted, "several reasonable inferences to support a nighttime search" are apparent from the information provided. *Bourke*, 2005 WL 1514324, at *2. The court of appeals listed several inferences that could have been drawn from facts presented in support of the search warrant about Bourke and his premises:

> [Bourke] was at large and could destroy evidence in the barn before morning; * * * [Bourke] and his co-defendants were in the process of manufacturing methamphetamine which could cause explosions, thus destroying evidence and property, and putting human life in peril; * * * and * * * the premises was a crime scene and evidence needed to be preserved and catalogued.

*Id.*

We agree with the court of appeals that the above inferences were reasonably drawn from the application. The facts presented indicated that Bourke opened the door to the barn and then fled the scene while the police entered the pole barn to apprehend three suspects inside. The investigator averred that the pole barn was the site of methamphetamine production. As far as the issuing judge knew, Bourke was at large. There is nothing unreasonable in concluding that Bourke, then a suspect, would want to destroy the evidence of the methamphetamine production on his property if he

were given the opportunity. Given our "great deference to the issuing judge's determination," *Jones*, 678 N.W.2d at 11, and "the preference to be accorded warrants," *Harris*, 589 N.W.2d at 791 (internal quote marks omitted), those facts alone establish a reasonable suspicion that the nighttime search was "necessary to prevent the loss, destruction, or removal of the objects of the search." Minn.Stat. § 626.14; *see also State v. Quick*, 659 N.W.2d 701, 719 (Minn. 2003) (concluding that "[b]ecause of the necessity of preserving and testing evidence at a crime scene in a timely manner, the nighttime provision was justified" under section 626.14); *State v. Van Wert*, 294 Minn. 464, 465, 199 N.W.2d 514, 515 (1972) (finding that nighttime search was authorized "[t]o prevent destruction of the easily disposable items" that related to defendant's "check-forging activities").

We hold that, under our deferential standard of review, and given the facts and reasonable inferences available to the issuing judge in Bourke's case, the state met its burden of showing that there was at least a reasonable suspicion that a nighttime search of Bourke's property was necessary under Minn.Stat. § 626.14 to preserve evidence.[7]

## III.

We turn next to Bourke's constitutional argument. Bourke argues that nighttime searches are unreasonable under the Fourth Amendment unless the warrant application presents particularized facts showing that there is a reasonable suspicion that the search needs to be conducted in the nighttime. The essence of Bourke's argument is that, similar to no-knock searches, the Fourth Amendment requires that the police have a reasonable suspicion that a nighttime search is necessary under the circumstances. *Cf. Richards*, 520 U.S. at 394, 117 S.Ct. 1416 ("[P]olice must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."). Bourke bases his argument on the assertion that at the time of the ratification of the Fourth Amendment, reasonable searches were "those that were conducted during daytime hours and after law enforcement officials had knocked and announced their presence and authority to search." Thus, Bourke concludes that "a nighttime search should only be conducted if a neutral magistrate first finds it reasonable to do so."

Because we have held that Minn.Stat. § 626.14 requires a showing that is at least as high as Bourke's proposed Fourth Amendment requirement and because, as discussed *supra*, we conclude that the statute was not violated, we decline to decide the constitutional issue raised by Bourke.

Affirmed.

7. Because we have concluded that the nighttime search was proper under the statute, we do not reach the question of whether suppression of evidence seized in execution of an improperly issued nighttime search warrant is an appropriate remedy. *See Lien*, 265 N.W.2d at 840–41 (refusing to suppress evidence even though a nighttime search warrant was not authorized under Minn.Stat. § 626.14). Regarding Bourke's constitutional argument, we note that the Supreme Court has recently determined that the Fourth Amendment does not automatically require the exclusion of evidence obtained as a result of an improper no-knock search. *Hudson v. Michigan*, 547 U.S. ——, ——, 126 S.Ct. 2159, 2163–64, 165 L.Ed.2d 56 (2006). Because, as set forth *infra*, we do not decide the constitutional question Bourke raises, we likewise express no opinion as to the proper remedy if there had been a constitutional violation here.