*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1782**

State of Minnesota,
Respondent,

vs.

Donald William Carlson,
Appellant.

**Filed August 11, 2014
Affirmed
Schellhas, Judge**

Wright County District Court
File No. 86-CR-12-5803

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Greg T. Kryzer, Assistant County Attorney, Buffalo, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges his fifth-degree controlled-substance-sale conviction, arguing that the district court (1) violated his speedy-trial right, (2) erred by not

suppressing evidence seized during the execution of a nighttime search warrant, and (3) abused its discretion by declining to admit hearsay evidence. We affirm.

## FACTS

In an application for a warrant to search an Otsego property for items including marijuana and paraphernalia associated with manufacturing controlled substances, Wright County Sheriff's Deputy Todd Jorgenson stated that, at about 7:30 p.m. that day, he learned from Wright County Sheriff's Deputy Travis Macleod that Deputy Macleod interviewed three juvenile males found near the Otsego property. The juveniles possessed freshly cut marijuana, and two of them had gone to the property to hide it. After arriving at the property, Deputy Jorgenson smelled the strong odor of fresh marijuana emitting from the house and observed windows covered with dark plastic and custom-made ventilation devices on the house. A neighbor told Deputy Jorgenson that appellant Donald Carlson owned the property but did not live in the house, mowed the lawn monthly, and often moved items in and out of the house. A "Juvenile Reporting Person" told Deputy Jorgenson that the house had appeared vacant for several years. Deputy Jorgenson believed that a search that night was necessary because he did not learn of the "suspected marijuana grow" until after 8:00 p.m., the police were securing the house, and the execution of a search warrant was necessary "to keep evidence from disappearing or being destroyed."

The district court granted the search warrant, finding that "probable cause exist[ed] for the issuance of a search warrant" and "a nighttime search [was] necessary to prevent the loss, destruction, or removal of the objects of said search." Law-enforcement

officers executed the warrant between 10:00 p.m. and 11:00 p.m. and seized items including marijuana and paraphernalia associated with growing marijuana. Respondent State of Minnesota charged Carlson with fifth-degree controlled-substance sale under Minn. Stat. § 152.025, subd. 1(a)(1) (2010).

On January 31, 2013, Carlson moved the district court to suppress all evidence obtained through execution of the search warrant, arguing that the warrant was not supported by probable cause. Pending the court's ruling on his suppression motion, Carlson demanded a speedy trial—but agreed to an April 8 trial date, and asserted an alternative-perpetrator defense, noting that his tenant, whom he did not identify, might have been the person growing marijuana on the property and that the tenant had "disappeared." The district court denied Carlson's suppression motion, finding that the search warrant was supported by probable cause and that "[i]t [was] reasonable to suspect that if [Carlson] learned of the police activity at his house, he would attempt to remove the marijuana plants before morning."

In March, less than three weeks before the scheduled commencement of trial, Carlson produced a copy of a lease for the property that he allegedly entered into with a tenant, K.J., and an undated transcript, purportedly of a secretly recorded conversation between K.J. and Carlson, in which K.J. confessed to growing marijuana on the property. Carlson argued that, although hearsay, the transcript was admissible as K.J.'s statement under Minn. R. Evid. 804(b)(3). Upon the state's request, the district court continued the trial to May 13 so that the state could investigate the authenticity of K.J.'s purported lease and hearsay statement. Carlson was not in custody pending trial.

3

At a pretrial hearing on May 6, Carlson informed the district court that, although a private investigator attempted to serve K.J. with a subpoena and Carlson tried to arrange a meeting with K.J., Carlson was unsuccessful in his attempts to serve K.J. with a subpoena for trial. The state maintained that K.J. did not exist and that Carlson had fabricated the purported lease and transcript of the secretly recorded conversation with K.J. The district court denied Carlson's motion to admit K.J.'s hearsay statement, reasoning that Carlson failed to make reasonable efforts to procure K.J.'s testimony or attendance. A jury found Carlson guilty as charged.

This appeal follows.

## DECISION

### Speedy-Trial Right

Carlson argues that the district court violated his speedy-trial right because the trial did not commence until approximately three-and-one-half months following his demand. We disagree.

Criminal defendants have a constitutional right to speedy trials. U.S. Const. amend. VI; Minn. Const. art. 1, § 6. Generally, "[b]y rule in Minnesota, trial is to commence within 60 days from the date of the demand." *State v. DeRosier*, 695 N.W.2d 97, 108–09 (Minn. 2005); *accord* Minn. R. Crim. P. 6.06, 11.09. "In determining whether a delay constitutes a deprivation of the right to a speedy trial, courts consider (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his or her right to a speedy trial, and (4) whether the delay prejudiced the defendant." *DeRosier*, 695 N.W.2d at 109 (citing *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S. Ct. 2182, 2191–

4

93 (1972)). Failing to commence trial within 60 days of the demand raised "a presumption that a [speedy-trial-right] violation ha[d] occurred." *State v. Windish*, 590 N.W.2d 311, 316 (Minn. 1999); *see State v. Friberg*, 435 N.W.2d 509, 512 (Minn. 1989) ("[D]elays greater than 60 days after a demand for speedy trial has been made are presumptively prejudicial and require further inquiry to determine whether there was good cause for the delay."). But, "[w]hen the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation." *DeRosier*, 695 N.W.2d at 109.

Here, Carlson demanded a speedy trial on January 31, 2013, but agreed to a trial date of April 8. The trial continuance from April 8 to May 13, although presumptively prejudicial, was the direct result of Carlson's late disclosure of evidence to support his alternative-perpetrator defense. He did not produce the transcript of K.J.'s purported secretly recorded statement until March 29, when he argued that K.J.'s statement constituted an "explicit confession that [K.J.], not . . . Carlson, committed the crime charged." Although Carlson provided the state ample notice of his alternative-perpetrator defense at a hearing on January 31, 2013, he did not notify the state of K.J.'s alleged confession until late March. We conclude that the district court properly exercised its discretion by granting the state's motion for a trial continuance to allow the state to investigate the authenticity of the newly produced evidence.

We acknowledge that the trial did not commence on May 13 for reasons not clear in the record. The parties engaged in pretrial discussions on May 13 and went off the record with plans to reconvene later that day. But the parties did not reconvene until

May 14, when trial commenced. Nonetheless, we conclude that the district court did not violate Carlson's speedy-trial right by commencing trial on May 14, approximately three-and-one-half months after Carlson's speedy-trial demand.

*Nighttime Warrant*

The district court denied Carlson's suppression motion, reasoning that probable cause supported issuance of a nighttime warrant. Carlson challenges the nighttime warrant. Carlson's sole challenge to the court's denial of his suppression motion is that Deputy Jorgenson's warrant application did not provide reasonable suspicion that a nighttime search was necessary. He asks us to consider his argument in the interests of justice even though he failed to raise it in district court. We decline. A defendant's "[f]ailure to include any" "defenses, objections, issues, and requests then available" in a pretrial "motion to dismiss or to grant appropriate relief . . . constitutes waiver." Minn. R. Crim. P. 10.01, subd. 2.

Moreover, our review of the record indicates that Carlson's argument is unpersuasive. "When reviewing a pretrial order on a motion to suppress, we review the district court's factual findings under our clearly erroneous standard. We review the district court's legal determinations, including a determination of probable cause, de novo." *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (citations omitted). Under the United States and Minnesota Constitutions, "no Warrants shall issue, but upon probable cause," U.S. Const. amend. IV; *accord* Minn. Const. art. I, § 10, and, under Minn. Stat. § 626.14 (2010),

6

[a] search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public.

"[A]n application for a nighttime warrant under section 626.14 must establish reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety." *State v. Jackson*, 742 N.W.2d 163, 167–68 (Minn. 2007).

But we must "give great deference to the issuing judge's determination . . . of whether a nighttime search warrant should be authorized under Minn. Stat. § 626.14." *State v. Bourke*, 718 N.W.2d 922, 927–28 (Minn. 2006) (quotation omitted). Here, similar to *Bourke*, "As far as the issuing judge knew, [Carlson] was at large. There is nothing unreasonable in concluding that [Carlson], then a suspect, would want to destroy the evidence of the [marijuana growing] on his property if he were given the opportunity." *Id.* at 928–29. We therefore affirm the district court's denial of Carlson's suppression motion.

### Hearsay Evidence Regarding Alternative-Perpetrator Defense

Carlson argues that the district court abused its discretion by denying his motion to admit K.J.'s hearsay under Minn. R. Evid. 804(b)(3). He argues that the denial violated his right to present an alternative-perpetrator defense. We disagree.

"Even when a defendant alleges that his constitutional rights were violated, evidentiary questions are reviewed for abuse of discretion." *State v. Peterson*, 764 N.W.2d 816, 821 (Minn. 2009).

7

> The Due Process Clauses of the United States and Minnesota Constitutions protect a criminal defendant's right to a meaningful opportunity to present a complete defense, including the ability to present evidence suggesting that another individual committed the charged offense. However, a defendant's due process right to present a complete defense yields to the application of an evidentiary rule unless the rule "infringe[s] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [the rule is] designed to serve."

*State v. Pass*, 832 N.W.2d 836, 841–42 (Minn. 2013) (citations omitted) (quoting *Holmes v. S. Carolina*, 547 U.S. 319, 324–25, 126 S. Ct. 1727, 1731 (2006) (quotation omitted)). The district court must not admit alternative-perpetrator evidence when the defendant does not first "lay a proper foundation for admission of such evidence by offering evidence that has an inherent tendency to connect the alternative perpetrator to the commission of the charged crime." *State v. Hokanson*, 821 N.W.2d 340, 351 (Minn. 2012) (quotation omitted), *cert. denied*, 133 S. Ct. 1741 (2013).

The district court properly excludes alternative-perpetrator evidence when the evidence is inadmissible hearsay because "[i]nadmissible hearsay statements cannot inherently connect an alternative perpetrator to a crime." *State v. Scanlon*, 719 N.W.2d 674, 677 (Minn. 2006). Hearsay is generally inadmissible, Minn. R. Evid. 802, but is admissible when made against the declarant's interest "if the declarant is unavailable as a witness." Minn. R. Evid. 804(b)(3). A declarant is unavailable as a witness when the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under

8

subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means." Minn. R. Evid. 804(a)(5).

The district court denied Carlson's motion to admit K.J.'s hearsay under rule 804(b)(3), reasoning that Carlson failed to make reasonable efforts to procure K.J.'s testimony or attendance and, consequently, failed to show that K.J. was unavailable. Carlson argues that his efforts to procure K.J.'s testimony or attendance were reasonable, arguing that, about two weeks before the May 6, 2013 hearing, Carlson arranged a meeting with K.J. that K.J. did not attend; K.J. was, as of May 6, living in Mount Prospect, Illinois; and Carlson continued, through undisclosed means, "to try to get [K.J.] to cooperate." He offered no evidence to support those assertions. On appeal, he identifies no legal authority to support his argument that his efforts were reasonable. And he provides no indication that applying the hearsay rules "infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule[s are] designed to serve." *Pass*, 832 N.W.2d at 842 (quotation omitted).

We conclude that the district court did not abuse its discretion by denying Carlson's motion for admission of K.J.'s hearsay statement.

**Affirmed.**