*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1661**

State of Minnesota,
Respondent,

vs.

Luis Rodolfo Rojas-Santos,
Appellant.

**Filed December 7, 2015
Reversed
Cleary, Chief Judge
Dissenting, Hooten, Judge**

Hennepin County District Court
File No. 27-CR-13-39983

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Thomas Caturia (certified student attorney), Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Chandler (certified student attorney), St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Cleary, Chief Judge; and Halbrooks, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

On appeal from his conviction of first-degree controlled substance crime (sale), appellant seeks review of a district court order denying his motion to suppress evidence on the basis that the nighttime search of his home was unlawful. Because the district court erred in finding reasonable suspicion to authorize a nighttime search, we reverse.

**FACTS**

On December 4, 2013, the Minneapolis police applied for a nighttime search warrant to search appellant's home. The police officer's supporting affidavit stated that a confidential reliable informant (CRI) had been in the residence within the previous 72 hours and had seen a large quantity of cocaine or crack cocaine. The CRI gave a specific description of a person named "Chilango" and said that Chilango sells cocaine out of the house. The CRI also told police that "Chilango only sells out of [the house] after [6:00 p.m.] and that he sells throughout the night." Before the officer applied for the search warrant, he surveilled the house and saw several vehicles pull up to the house over a period of time. Each time a vehicle arrived, someone would get out of the vehicle, go into the house for a few minutes, and come out a short time later. According to the officer, this behavior is common at houses where narcotics are sold. The officer's search warrant application stated that a nighttime search was "necessary to prevent the loss, destruction or removal" of evidence because the CRI conducted a controlled buy after 8:00 p.m. and the CRI said that Chilango "conducts his narcotics sales after 2000 hours

2

and late into the night." No explanation was given in the application for the difference between the time sales began as stated in the affidavit (only after 6:00 p.m.) and the time sales began as suggested in the application (after 8:00 p.m.).

A judge authorized the search warrant on the evening of December 4, 2013 at 8:24 p.m. Police executed the warrant that night at approximately 9:30 p.m. Officers found over a kilogram of cocaine, miscellaneous drug paraphernalia, a handgun holster, a bulletproof vest, and $2,765 in cash in the house. Appellant—who was identified as "Chilango"—was arrested and charged with first-degree sale of a controlled substance in violation of Minn. Stat. § 152.021, subd. 1(1) (2012).

Appellant moved to suppress the evidence obtained from the search, arguing that the search warrant application did not show that it was necessary to conduct a nighttime search. The district court denied the motion. The district court considered the information from the CRI, found that drug sales occurred at the house chiefly at night, and determined that "[i]t was reasonable for [the issuing judge] to infer that the narcotics would be lost, destroyed or removed from the residence before the next morning because 'Chilango' only sold narcotics at night." The district court concluded that the search warrant application established reasonable suspicion to believe that a nighttime search was necessary to preserve evidence.

To preserve the suppression issue for review, appellant agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4. The district court found appellant guilty and sentenced him to 74 months in prison. This appeal followed.

## DECISION

Minnesota law provides:

> A search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public. The search warrant shall state that it may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless a nighttime search outside those hours is authorized.

Minn. Stat. § 626.14 (2012). The statute "specifically aims to prevent police intrusion into the personal and private activities of individuals in their homes at night unless the police articulate facts sufficient to support their intrusion." *State v. Jackson*, 742 N.W.2d 163, 173 (Minn. 2007). The statute "seems to require . . . some showing to the magistrate that the warrant can *only* be executed successfully in the nighttime.'' *State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006) (emphasis added) (quotation omitted).

The rationale for section 626.14 is to "protect the public from the abrasiveness of official intrusions during the night." *Jackson*, 742 N.W.2d at 170 (quotation omitted). The "special status of a person's home at night" is reflected in the common law and in early American statutes barring such searches. *Id.* at 169-170. Section 626.14 "appears to represent a codification and application of a legal history that illustrates an aversion to nighttime searches." *Id.* It allows nighttime searches only under statutorily specified conditions. "A search warrant may be served *only* between the hours of 7:00 a.m. and 8:00 p.m. *unless* the court determines on the basis of facts stated in the affidavits that a

4

nighttime search outside those hours is *necessary* . . . ." Minn. Stat. § 626.14 (emphasis added). In 1992, the legislature amended the search warrant statute to clarify that nighttime hours begin at 8:00 p.m. and end at 7:00 a.m. 1992 Minn. Laws ch. 569, § 29, at 1940. The statute previously read "[t]he search warrant shall state that it may be served only in the daytime unless a nighttime search is authorized." *Id.* The inclusion of the phrase "outside those hours" in the amended statute emphasizes that any search that takes place after 8:00 p.m. or before 7:00 a.m. is a nighttime search.

Before a nighttime search can be authorized under section 626.14, the application for the search warrant "must establish at least a reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety." *Bourke*, 718 N.W.2d at 927. The standard for reasonable suspicion is "not high" but requires "something more than an unarticulated hunch." *Id.* (quotation omitted). To meet the standard, "the officer must be able to point to something that objectively supports the suspicion at issue." *Id.* (quotation omitted). On review, we give great deference "to the issuing judge's determination of whether a nighttime search warrant should be authorized under Minn. Stat. § 626.14. The issuing judge's determination must be based on the factual allegations contained in the affidavit in support of the warrant application and the reasonable inferences to be drawn therefrom." *Bourke*, 718 N.W.2d at 928 (quotation omitted).

Here, the factual allegations in the supporting affidavit and the reasonable inferences drawn from them do not establish a reasonable suspicion that a nighttime

search was necessary to preserve evidence.[1] The district court characterized apparently conflicting statements in the search warrant application and affidavit regarding the timing of narcotics sales as "typographical inconsistencies." The district court explained, "At one point in the application, [the officer] attests that 'Chilango' only sells after 6:00 p.m. and at another the application states that 'Chilango' only sells after 8:00 p.m." This analysis misstates the factual allegations in the affidavit and application. The affidavit states, "Chilango only sells out of this address after 1800 hours and . . . throughout the night" while the application for a nighttime search states that "Chilango conducts his narcotics sales after 2000 hours and late into the night." The application does not say that appellant *only* sells after 2000 hours. It says that appellant sells after 8:00 p.m. and late into the night. The affidavit says that appellant only sells drugs after 6:00 p.m. The district court's interpretation of the affidavit and application was therefore in error. The supporting affidavit unambiguously indicates that there are two daytime hours during which narcotics sales occur at the house—between the hours of 6:00 p.m. and 8:00 p.m. There is no explanation as to why the warrant could only be executed after that time,

---

[1] The state does not allege that officer or public safety was at issue, as there was no evidence of weapons at the house, or of security cameras that would warn occupants of the arrival of police officers, or of other circumstances that would create a dangerous situation to public safety or to police officers executing the warrant. *See State v. Wasson*, 615 N.W.2d 316, 319, 322-23 (Minn. 2000) (police requested and received permission to execute a no-knock, nighttime search warrant in the interest of officer safety where weapons had been found during a previous search of the same residence). We therefore discuss only whether the need to preserve evidence supported the nighttime search.

during nighttime hours.  The application and affidavit failed to show that it was necessary to conduct a nighttime search.[2]

The district court concluded that, notwithstanding what it saw as "typographical inconsistencies," factual allegations in the search warrant application showed that "any potential narcotics were stored in and sold from the residence chiefly at night."  The district court held that this supported a reasonable inference that a nighttime search was necessary to preserve evidence that would otherwise be lost or removed by the next morning due to a night of sales.  This reasoning fails to explain why officers could not execute a warrant between 6:00 p.m. and 8:00 p.m.

Factual allegations in the affidavit and application support the inference that drugs were sold at the residence chiefly at night.  But when considered together, the factual allegations do not support the inference that the warrant could only be executed successfully at night, or that a nighttime search was necessary to preserve evidence.  The CRI reported seeing narcotics at appellant's residence in the 72 hours before law enforcement applied for a warrant.  The affidavit does not indicate whether the CRI viewed the drugs during daytime or nighttime hours. The officer's affidavit explains that he conducted surveillance within 72 hours before applying for the warrant and "saw

---

[2] It appears the officer sought a warrant after 8:00 p.m. without an explanation as to why the application was not submitted the day before, or earlier in the day, or as to why the warrant had to be executed that night.  We do not attribute any ulterior motive to this officer in seeking a warrant after 8:00 p.m.  We are concerned, however, that the authorization of a nighttime search not become a *fait accompli* based simply on the submission of an application after 8:00 p.m., when any search authorized becomes a nighttime search.

several vehicles pull up to the address over a period of time." The officer believed that the behavior of the people who got out of each vehicle and went in and out of the house indicated that narcotics sales were likely occurring in the house. The officer did not say whether his surveillance occurred during daytime or nighttime hours. The warrant application also did not state on what date the controlled buy occurred. Because the controlled buy might have happened the day before, or two days before, or a week before police applied for the search warrant, it does not support an inference that immediate action was necessary to preserve evidence on the evening of December 4, 2013. If officers were concerned about preserving as much evidence as possible, it would be best to conduct the search closer to 6:00 p.m. when—based on the facts alleged in the application and affidavit—it is likely that appellant would be present at his residence, fewer sales would have already occurred, and as much evidence as possible would be intact. Even under our deferential standard, the state has not met its burden of showing at least a reasonable suspicion that a nighttime search was necessary. Officers therefore executed a search warrant with an invalid nighttime authorization when they searched appellant's residence.

This court must determine whether evidence seized in the invalid nighttime search must be suppressed. "[S]erious violations which subvert the purpose of established procedures will justify suppression." *State v. Cook*, 498 N.W.2d 17, 20 (Minn. 1993). The Minnesota Supreme Court has held that where police

> execute a search warrant with an invalid nighttime authorization, and with no knowledge that defendant had not

8

> yet entered a period of nighttime repose . . . the evidence seized in the search [must] be suppressed, both because the entry subverted the basic purpose of the statute regulating nighttime searches and the entry violated the defendant's rights to be free from unreasonable searches and seizures under the United States and Minnesota Constitutions.

*State v. Jordan*, 742 N.W.2d 149, 153 (Minn. 2007).

In *Jackson*, the supreme court defined the privacy interest that restrictions on nighttime searches are designed to protect as the "period of nighttime repose." 742 N.W.2d at 171 (emphasis omitted). "Repose" refers to "certain private activities that occur in the home" at night, and which are "customary nighttime activities." *Id.* Whether occupants of a home have entered their period of nighttime repose is a fact-intensive inquiry. *See id.* (discussing facts relevant to this determination). Depending on the circumstances surrounding the search, it may be more or less apparent to officers whether occupants are engaged in customary nighttime activities. *Id.* In reviewing whether an invalid nighttime search intruded upon an occupant's protected period of repose, the supreme court has held that such a search is not a serious violation of Minn. Stat. § 626.14 where officers knew immediately before executing a warrant that occupants had not entered nighttime repose. *State v. Lien*, 265 N.W.2d 833, 841 (Minn. 1978). In *Lien*, an invalid nighttime search occurred, but in the brief period of time before officers executed the search warrant, they observed several people going in and out of the apartment to be searched, they watched the defendant's car arrive and observed him entering the apartment, they knew that the defendant was fully clothed, and when they approached the building they observed that the apartment door was slightly open.

9

*Id.* at 836, 841. Law enforcement officers did not make similar observations immediately prior to execution of the nighttime search warrant in this case.

Minn. Stat. § 626.14 also protects "a homeowner's interest in safeguarding against unauthorized intrusion of a home that is occupied by resident members of his family and social guests." *Jordan*, 742 N.W.2d at 154. In *Jordan*, the supreme court noted that officers entered the home without knowing "whether [the homeowner] or any other occupants were sleeping, were engaged in particularly personal behavior which they were attempting to keep private, or were in their nightclothes." *Id.* at 153. This analysis suggests that it is important to consider what officers in this case knew about other occupants of appellant's residence, in addition to the target of the search. There is no indication that officers knew that occupants had not already entered a period of nighttime repose at the time officers executed the warrant.

The state argued, and the district court found, that the warrant was executed at approximately 9:30 p.m. on December 4, 2013. This is a nighttime search. In *Jackson*, the supreme court held that entry into a home at 9:25 p.m. on December 11 fell within the period of nighttime repose, as it had been dark for several hours. 742 N.W.2d at 177. In the instant case, the district court found that when officers executed the search warrant, they knocked, announced themselves, and then saw appellant sitting on the living room couch. Critically, however, the officers did not see appellant until they entered the residence with the warrant. As a result, the officers' knowledge that appellant had not yet entered a period of nighttime repose was gained only *after* execution of the search

warrant and they had no way to know that appellant, his family members, or others were not in the period of nighttime repose before execution of the warrant. At the time officers executed the search warrant, they only had the expectation that appellant would be awake and active, because they believed that drug sales occurred at appellant's residence throughout the night. Such an expectation is not the equivalent of knowledge. *See Lien*, 265 N.W.2d at 841 (holding that an invalid nighttime search is not a serious violation of Minn. Stat. § 626.14 where officers knew, based on observations they made at a residence *just before* executing a search warrant, that occupants of the residence had not entered nighttime repose).

In sum, the application for the search warrant and supporting affidavit did not provide at least a reasonable suspicion that a nighttime search was necessary to preserve evidence. The invalid nighttime search subverted the purpose of Minn. Stat. § 626.14, requiring suppression of the evidence seized during the search. The district court erred in denying appellant's motion to suppress the evidence arising from the search. Because our conclusion on the nighttime search issue is dispositive, we decline to address the remaining issue of dispositional departure.

**Reversed.**

11

**HOOTEN**, Judge (dissenting)

I respectfully dissent. Here, there is no dispute that there was probable cause for issuance of the search warrant; the only issue is whether the issuing judge validly authorized a nighttime entry into appellant's residence.[1] Because the warrant application contained articulable facts that established at least a reasonable suspicion that a nighttime search was necessary to preserve evidence, I would conclude that the search warrant was valid, and, even if it was not valid, suppression of the evidence of contraband would not be required under the facts of this case.

All that is required for a nighttime search under Minnesota law is that the application for the search warrant "must establish at least a reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006). The standard for reasonable suspicion is "not high" but requires "something more than an unarticulated hunch." *Id.* (quotations omitted). To meet the standard, "the officer must be able to point to something that objectively supports the suspicion at issue." *Id.* (quotation omitted). "The issuing judge's determination must be based on the factual allegations contained in the affidavit in support of the warrant application and the reasonable inferences to be drawn therefrom." *Id.* at 928 (quotation omitted).

---

[1] Moreover, this case does not involve a knock and announce issue. In the search warrant application, the requesting officer did not seek authorization for an unannounced entry into appellant's residence. Upon arriving at the residence, the officers knocked on the door and announced their presence, and one of the occupants answered the door.

In *Bourke*, the Minnesota Supreme Court concluded that appellate courts should give "great deference" to an issuing judge's determination of whether to authorize a nighttime search warrant. *Id.* at 927–28. The supreme court came to this conclusion by using the same rationale that is used for giving great deference to an issuing judge's determination of probable cause for a search warrant. *Id.* "The primary rationale for giving the issuing judge 'great deference' is to avoid setting such a high standard for warrants that the police would be discouraged from seeking the warrant in the first place." *Id.* To ensure that police are not discouraged from seeking a warrant, "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded warrants." *State v. Harris*, 589 N.W.2d 782, 791 (Minn. 1999) (quotations omitted).

As our supreme court recognized in *State v. Miller*, 666 N.W.2d 703, 714 (Minn. 2003), an issuing judge may draw reasonable inferences from a search warrant application based upon common sense and the information provided regarding the nature and circumstances of a crime. Quoting *Illinois v. Gates*, 462 U.S. 213, 231–32, 103 S. Ct. 2317, 2328–29 (1983), the court in *Miller* observed:

> Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

D-2

*Id.*

Here, because appellant was selling narcotics out of his home during the nighttime hours, there was a reasonable—and common-sense—inference that a significant quantity of the narcotics would be diminished in part or whole during the nighttime hours. In his application for a nighttime search warrant, the police officer did not rely on an "unarticulated hunch" or boilerplate language, but pointed to specific facts given to him by a confidential reliable informant (CRI). The officer noted that the CRI had reported that a 22-year-old Hispanic male named "Chilango" sold cocaine or crack cocaine from his residence and that the CRI had seen a large quantity of the drugs in Chilango's house within the 72 hours prior to the application for the search warrant. The CRI also reported that Chilango sold the narcotics during the night, beginning as early as 6:00 p.m. and continuing "throughout the night." The officer also stated that the CRI made a controlled buy from Chilango at the residence after 8:00 p.m. In describing his surveillance of the residence, the officer observed that over a period of time, "several" vehicles would drive up; one person would get out of each vehicle, go into the house, and then come out after only a few minutes; and then the vehicle would leave. The officer reported that based upon his experience as a narcotics investigator, this observation was "very common with houses that are dealing narcotics." Based upon these specific facts, the officer requested authorization to conduct a nighttime search "to prevent the loss, destruction or removal of" the narcotics, noting specifically that the CRI's controlled buy was conducted after

8:00 p.m. and the CRI's report that Chilango conducted his narcotics sales after 8:00 p.m. and "late into the night."

The majority correctly notes that these facts indicate that appellant sold drugs during daytime hours between 6:00 p.m. and 8:00 p.m. But, under the stipulated facts, the issuing judge authorized the search warrant at 8:24 p.m., 24 minutes after the statutory deadline for a daytime search. It was reasonable to infer from these facts that if police had waited until 7:00 a.m. the next morning or 6:00 p.m. the next night to execute the search warrant, both of which would constitute a daytime search under Minn. Stat. § 626.14, appellant would have sold at least some, if not all, of the narcotics throughout the night, and evidence would have been lost. Giving great deference to the issuing judge and the preference to be accorded search warrants, the search warrant application established at least a reasonable suspicion that a nighttime search was necessary to preserve evidence.

The majority fails to identify even one reported Minnesota case that supports the invalidation of the nighttime search warrant, and the suppression of the evidence, under these circumstances. In *Bourke*, our supreme court noted that the validity of a nighttime search warrant may be based upon inferences that may be reasonably drawn from the application. 718 N.W.2d at 928. In rejecting Bourke's argument that the search warrant was a product of boilerplate language, the supreme court determined that the statement that Bourke was at large was sufficient to support a reasonable inference that he could return and destroy evidence of his methamphetamine manufacturing operation—even though such reasonable inference was not clearly articulated in the search warrant. *Id.* at

D-4

928–29.  Here, the reasonable inference that can be drawn from the warrant application is that narcotics would be sold from the residence throughout the night, and evidence of the quantity, and perhaps even the existence, of the narcotics would be lost if the nighttime search warrant was not immediately issued.

And, *State v. Jackson*, 742 N.W.2d 163 (Minn. 2007), and *State v. Jordan*, 742 N.W.2d 149 (Minn. 2007), are easily distinguishable.  In both of those cases, even the state agreed that the nighttime search warrants in those cases were invalidly issued because there was no statement of facts made upon which reasonable inferences could be drawn as to the necessity of a nighttime search.  *Jackson*, 742 N.W.2d at 167–68; *Jordan*, 742 N.W.2d at 151, 153.

Cases from other jurisdictions have upheld nighttime searches when there was particularized evidence of narcotic drug sales that occurred late at night or in the early morning hours.  *See, e.g.*, *United States v. Randle*, 196 Fed. Appx. 676, 679–80 (10th Cir. 2006) (upholding nighttime search where affidavit in support of warrant application stated that defendant sold narcotics only after 10:00 p.m.); *State v. Jackson*, 571 P.2d 266, 268 (Ariz. 1977) (upholding nighttime search where affidavit in support of warrant application stated that defendant was selling marijuana "during all times of the day and night"); *State v. Eichorn*, 694 P.2d 1223, 1227–28 (Ariz. Ct. App. 1984) (finding good cause for nighttime search for narcotics where affidavit alleged two nighttime narcotic drug sales); *People v. Govea*, 235 Cal. App. 2d 285, 298–99 (Cal. Dist. Ct. App. 1965) (finding good cause for nighttime search when investigation and surveillance had established that nighttime narcotic sales had taken place); *Dunfee v. State*, 346 A.2d 173,

175–76 (Del. 1975) (upholding nighttime search where affidavit stated that informant indicated defendant was selling drugs from his home, anonymous calls reported suspicious activity from 8:00 p.m. to midnight, and informant made controlled buy); *State v. Fowler*, 674 P.2d 432, 439–40 (Idaho Ct. App. 1983) (finding good cause for nighttime search where surveillance had established that "several" nighttime controlled substance sales had occurred).

Here, the issuing judge could reasonably infer from the fact that appellant made a nighttime sale to a CRI after 8:00 p.m. and conducted his narcotic sales throughout the night that there was a reasonable suspicion that the quantity of the narcotics would be lessened or eliminated over the course of a night. Under our deferential standard of review, and given the facts and reasonable inferences available to the issuing judge, I would hold that the state met its burden of showing that there was at least a reasonable suspicion that a nighttime search was necessary. The district court, in providing the "great deference" that is given to an issuing judge, did not err in its conclusion that the nighttime search warrant was valid. *Bourke*, 718 N.W.2d at 927–28.

Even if the nighttime authorization were invalid, suppressing the evidence obtained in the search is not warranted under these facts. The core purpose behind Minn. Stat. § 626.14 was a historic aversion to nighttime searches. *Jackson*, 742 N.W.2d at 170. The "statute was intended to protect against, at a minimum, the indignity of being roused out of bed in the middle of the night and made to stand by in nightclothes." *Id.* The interest protected by the statute is the "freedom from intrusion during a period of nighttime repose." *Id.* at 171 (emphasis omitted). "[T]he test for whether suppression is

D-6

required is whether the violation of the statute was a serious one that subverted the purpose of the statute." *Jordan*, 742 N.W.2d at 153. "[T]he critical inquiry is what the officers know at the time of entry." *Id.* at 154. If the officers know that they will not be intruding on a period of nighttime repose, the evidence may be admissible. *Id.* But, the evidence should be suppressed if the officers do not know whether they will be intruding on a period of nighttime repose. *Id.*

The majority concludes that the officers here had only an "expectation" that appellant would not be in a period of nighttime repose when they executed the search warrant. But, on these stipulated facts, the police officers had more than a mere expectation that appellant would not be in repose at the time the search warrant was executed. Based upon their investigation, the officers knew before they executed the warrant that appellant sold narcotics late into the night and throughout the night. They executed the warrant at approximately 9:30 p.m., a reasonable hour when most people are still awake and when a 22-year-old man who sells drugs late into the night would certainly be awake. *See State v. Lien*, 265 N.W.2d 833, 836, 841 (Minn. 1978) (noting that a warrant executed shortly after 9:00 p.m. was executed at "a reasonable hour when most people are still awake"), *overruled on other grounds by Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997).[2] *Jackson* defined repose to include "certain private activities" that customarily occur at night. 742 N.W.2d at 171. Repose is also defined as

---

[2] Although *Lien* was decided before the legislature amended Minn. Stat. § 626.14 to define nighttime as 8:00 p.m. to 7:00 a.m., the amendment of this statute did not affect the *Lien* court's reasonableness determination, for Fourth Amendment purposes, that people tend to be awake shortly after 9:00 p.m. *See* 1992 Minn. Laws ch. 569, § 29, at 1940.

"[c]essation of activity." *Id.* (alteration in original) (quoting *Black's Law Dictionary* 1327 (8th ed. 2004)). But, appellant did not cease his activity at night. Instead, rather than sleeping or engaging in private activities associated with repose, the officers had evidence that it was during the night that appellant engaged in his commercial enterprise of selling drugs to the public. Under these circumstances, any supposed violation would not be a serious one that subverted the purpose of the statute. Ironically, given appellant's history of conducting narcotic sales throughout the night, it is more likely that had the search warrant been executed the following morning at 7:00 a.m. as a daytime warrant, appellant indeed would have been "roused out of bed" and "made to stand by in nightclothes." *Id.* at 170.

Contrary to appellant's assertion, there was also no constitutional violation of his Fourth Amendment rights. In *Jackson*, the supreme court concluded that a "search of a home at night is a factor to be considered in determining whether a search is reasonable under the Fourth Amendment." *Id.* at 177. The court ruled that police officers violated Jackson's constitutional rights "when, without information indicating that Jackson had not yet entered a period of nighttime repose, they entered her home at 9:25 p.m. in the wintertime—December 11—with a search warrant that invalidly authorized a nighttime entry." *Id.* This case is distinguishable from *Jackson*. The officers here had a warrant that validly authorized a nighttime entry and, unlike in *Jackson*, these officers had

information that they would be executing the warrant at a time when appellant would not be sleeping, but would be actively engaged in the sale of narcotics.[3]

Accordingly, I conclude that the district court did not err in determining that the nighttime search warrant was valid because there was a reasonable inference that a nighttime search was necessary to preserve evidence of narcotics. Even if the nighttime search warrant was invalid, under the facts of this case, the execution of the warrant did not seriously subvert the basic purpose of Minn. Stat. § 626.14 because it was executed at a time when the police officers were aware that appellant was not in repose, but was conducting sales of narcotics. Finally, there is no showing that appellant's Fourth Amendment rights were violated. The district court should be affirmed in its denial of appellant's motion for suppression.

---

[3] Notably, if this case had been brought in federal court, the nighttime aspect of this search for narcotics would not even be an issue. The Federal Rules of Criminal Procedure define daytime as the hours between 6:00 a.m. and 10:00 p.m. Fed. R. Crim. P. 41(a)(2)(B). The search here would have been within the federal definition of daytime. Furthermore, federal law allows search warrants relating to controlled substance offenses to be served "at any time of the day or night." 21 U.S.C. § 879 (2012). In rejecting a Fourth Amendment challenge to this federal statute, the United States Supreme Court in *Gooding v. United States* declared that nighttime searches for narcotics are treated differently from other searches and concluded that 21 U.S.C. § 879 "requires no special showing for a nighttime search, other than a showing that the contraband is likely to be on the property or person to be searched at that time." 416 U.S. 430, 458, 94 S. Ct. 1780, 1794 (1974). The Supreme Court noted that in cases involving searches for controlled substances, "Congress has considered the need for privacy to be counterbalanced by the public need for more effective law enforcement." *Id.* at 453–54, 94 S. Ct. at 1792. As was explained by Fourth Circuit in *United States v. Rizzi* in its rejection of the constitutional challenge to the federal statute allowing nighttime searches for narcotics, the Supreme Court "has never held that the Fourth Amendment prohibits nighttime searches." 434 F.3d 669, 674–75 (4th Cir. 2006).